IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Johnathan D. Simmons, | ) | C/A No.: 1:09-653-TLW-SVH |
| | ) | C/A No.: 1:09-858-TLW-SVH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of | ) | |
| Corrections, John Vickers, Michael | ) | |
| Najjar, Warden McCall, and Officer | ) | |
| Smith, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, who is proceeding *pro se* in these actions, is an inmate in the Special Management Unit ("SMU") at Perry Correctional Institution ("PCI"). Plaintiff's claims are construed as asserted under 28 U.S.C. § 1983, alleging violations of the Eighth Amendment.

Plaintiff filed two complaints on March 12, 2009, alleging identical facts and claims of excessive force, denial of medical care, and threats by Defendants: (1) C/A No.: 1:09-653-TLW-SVH ("First Action") and (2) C/A No.: 1:09-858-TLW-SVH ("Second Action"). Plaintiff filed the First Action in federal court, and the Second Action in state court. After Defendants removed the Second Action to federal court on April 2, 2009, the cases were consolidated by order of United States Magistrate Judge Robert S. Carr on July 30, 2009 [Entry #28 in the First Action; Entry #25 in the Second Action].

Before the court are the following motions: (1) Plaintiff's Motion to Remove a Prior Filing [Entry #71 in the First Action; Entry #60 in the Second Action]; (2)

Plaintiff's Motions to Amend the Complaint [Entries #75, #83 in the First Action; Entries #64, #71 in the Second Action]; (3) Plaintiff's Motion to Remand [Entry #68 in the Second Action]; (4) Plaintiff's Motion for a Hearing [Entry #84 in the First Action; Entry #72 in the Second Action]; (5) Plaintiff's Motion to Compel [Entry #90 in the First Action; Entry #81 in the Second Action]; and (6) Defendants' Motion for Summary Judgment [Entry #102 in the First Action; Entry #91 in the Second Action].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

The complaint alleges defendant Smith was escorting Plaintiff back to his cell after a sick call visit when they "ha[d] words." Am. Compl. at 3 [Entry #8].[1] After Plaintiff was placed in his cell, he claims Smith threatened to come back later to "mess Plaintiff up." *Id.* at 4. The cells in SMU have a solid outer door and an inner cell door. According to Plaintiff, Smith intentionally left Plaintiff's inner cell door unlocked, which Plaintiff claims he did not initially notice.

Later, defendant Vickers escorted defendant Najjar around the SMU while Najjar handed out books from the law library and legal materials to inmates. Vickers asserts that

---

[1] For ease of reference, the undersigned will refer only to the Entry numbers in the First Action when citing to the record. However, the identical allegations, arguments, and evidence are presented in both cases unless otherwise noted.

the usual practice involved Najjar going through the solid outer door after an officer unlocked it. Vickers Aff., ¶ 3 [Entry #102-5]. The inmate would be restrained by his inner cell door, but could receive materials from Najjar through the inner cell door. *Id.* Defendants claim they were not aware that Plaintiff's inner cell door was unlocked at the time of the incident. *Id.* at ¶ 4.

Plaintiff claims that when Vickers unlocked the outer door, he realized his inner cell door was unlocked. According to Plaintiff, Vickers and Smith are friends and Vickers would "handle Smith's dirty work," therefore, Plaintiff believed Smith intentionally left the inner cell door unlocked as a "setup" to allow Vickers to later assault Plaintiff. Am. Compl. at 4. Plaintiff, without providing further details of his actions, alleges he "plan[ned] to run to get help before he allow[ed] them to viciously assault and batter him or even kill him." Am. Compl. at 4 [Entry #8].

Defendants assert, and Plaintiff does not dispute, that as Vickers unlocked the outer door, Plaintiff opened the inner door and kicked the outer cell door, thereby hitting Vickers and pushing him back. Vickers Aff. at ¶ 4, Najjar Aff. at ¶ 8 [Entry 102-5, #102-6]. Defendants assert that Plaintiff then began to hit Najjar in the head. *Id.*

Vickers and Najjar attest that they were able to get the Plaintiff on the floor and radio for help. Vickers Aff. at ¶¶ 5–6, Najjar Aff. at ¶ 9 [Entry 102-5, #102-6]. Plaintiff alleges that he was slammed to the floor by Vickers and that Najjar repeatedly kicked him in the side, back and head. Am. Compl. at 4 [Entry #8]. Plaintiff asserts that Vickers grabbed him around the neck and choked him after he was placed in cuffs while Najjar

continued to kick him. *Id.* As a result of the incident, Plaintiff's cell was stripped and he was placed on controlled cell status. Vickers Aff. at ¶ 9. Plaintiff asserts that he was taken to SMU and left unclothed in a cell for approximately six hours before being issued a blanket. Am. Compl. at 5. Plaintiff asserts that he did not receive a mattress or hygiene items for seven days. *Id.* Plaintiff also claims he was continuously refused medical attention, although he admits a nurse saw him shortly after the incident. *Id.*

Defendants filed a motion for summary judgment on October 29, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #103 in the First Action, Entry #91 in the Second Action]. To date, Plaintiff has failed to respond to the motion for summary judgment and *Roseboro* order, despite having since filed several letters alleging grievances unrelated to the incident in the complaint.

Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted and Plaintiff's motion to amend be denied as futile, rendering the remaining motions moot.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.   Analysis

1.   Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 130 S.Ct. at 1179  (internal citations and quotations omitted).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the record is insufficient to establish a claim for excessive force. First the use of force was necessary, as Plaintiff was not only escaping from his cell, but causing injury to SCDC staff after he left his cell. By Plaintiff's own admission, he planned to run out of his cell. There is also a relationship between the necessity of force and the amount of force used, as there is no evidence in the record that Defendants used greater force than was necessary to restrain Plaintiff. Although Plaintiff alleges that he was kicked and choked by Defendants, Defendant's affidavits, which Plaintiff has not disputed, indicate that Plaintiff was held in a headlock to restrain him from further hurting the officers or compromising the security of the prison. Additionally, Plaintiff's medical records do not indicate that he was injured, except for one small abrasion and a scrape. *See* [Entry #102-9]. Although Plaintiff indicated his back, chest, and neck hurt, the record reveals that he made the same complaints about his back and neck a few hours prior to the incident. *Id.* Finally, Defendants were reasonable in perceiving a threat from Plaintiff who forcefully exited his cell without notice or permission, thereby injuring Defendants. Therefore, after balancing the *Whitley* factors, and based on the record presented, the undersigned submits that Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment on this claim.

2. Conditions of Confinement

Plaintiff asserts that his cell was stripped out and that he was denied clothes or a blanket for six hours and was denied a mattress and hygiene items for a week. To state a

cause of action under the Eighth Amendment for the conditions of his confinement, Plaintiff must show that said conditions constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 US 337, 344–47 (1981); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Fourth Circuit has explained that to succeed on a claim under the Cruel and Unusual Punishment clause, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious' and (2) that subjectively officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998). If the deprivation is sufficiently serious, the objective component of the constitutional test is met. *Strickler v. Waters*, 989 F.2d 1275, 1380–81 (4th Cir. 1993).

Defendants argue that even if Plaintiff's allegations are true, this does not constitute a deprivation of a basic human need and is not "sufficiently serious." At most, Plaintiff was housed in a temperature-controlled cell without clothes for six hours and was denied a mattress and unspecified hygiene items for a week. Additionally, Plaintiff has not shown evidence of a serious medical and emotional deterioration attributable to the challenged condition. *Strickler*, 989 F.2d at 1379–80. Although Plaintiff claims his back, neck, and chest ached after the incident, he had complained about similar pain prior to the incident.

Additionally, assuming *arguendo* that the Plaintiff has shown a "sufficiently serious" deprivation of care, the subjective component of the test is only met if the official acted with a "sufficiently culpable state of mind." Plaintiff has provided no

evidence that Defendants knew of a danger to Plaintiff and failed to act despite the danger. Therefore, because Plaintiff has failed to prove that the deprivation was "sufficiently serious" or that Defendants acted with a "sufficiently culpable state of mind," it is recommended that Defendants be granted summary judgment with regard to Plaintiff's conditions of confinement claims.

### 3. Deliberate Indifference to Medical Needs

Plaintiff also appears to bring a claim for deliberate indifference to his serious medical needs, as he alleges that Defendants refused him medical attention. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was

careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Most pertinent to the case at hand, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized

or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Although Plaintiff alleges he was denied medical attention, he has provided no evidence to support this allegation. Plaintiff's medical records indicate he was treated directly before the incident on January 23, 2009, for "electric shocks up and down the back of both legs and down his spine," from which he had been suffering for two weeks. He was also seen by medical after the incident and no major injuries were observed. *See* [Entry #102-9]. He was seen again on January 27, 2009, and it was observed that his lacerations had healed. *Id.* He was seen again for severe pain and "electric shocks" up and down his legs and spine on February 3, 2009. Plaintiff has failed to set forth any facts through affidavit, medical records, or other evidence to support his allegation that Defendants acted with deliberate indifference to his serious medical needs. On the contrary, Plaintiff has been treated for all of his medical complaints. Therefore, Plaintiff has not demonstrated an actionable claim under § 1983 regarding his medical treatment and the undersigned recommends Defendants be granted summary judgment on Plaintiff's claim for medical indifference.

    4.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard the court is to follow in determining whether the

defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, it is respectfully submitted that Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

5.     State Law Claims

Having found that Defendants are entitled to summary judgment regarding Plaintiff's remaining constitutional claims, it is recommended that the court decline to

exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c).

    C.    Plaintiff's Motion to Amend the Complaint

Plaintiff filed motions to amend his complaint on August 8, 2010 and August 16, 2010 [Entries #75, #83 in the First Action; Entries #64, #71 in the Second Action]. Plaintiff's motions to amend seek relief for incidents unrelated to the original complaint. Specifically, the motions relate to relief sought for a proposed witness, who claims he is being drugged by Defendants and that Defendants have "set out to give all inmates HIV and AIDS" by using the same razors on multiple inmates. "[L]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). Here, Plaintiff's amendments would be futile as Plaintiff does not have standing to bring a claim on behalf of another inmate. *See Sciolino v. Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007) (holding denial of leave to amend complaint appropriate where proposed claim is futile). Accordingly, the undersigned recommends that Plaintiff's motions to amend his complaint be denied.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' Motions for Summary Judgment [Entry #102 in the First Action; Entry #91 in the Second Action] be

granted and Plaintiffs' Motions to Amend [Entries #75, #83 in the First Action; Entries #64, #71 in the Second Action] be denied. If the district judge accepts this recommendation, all other motions will be rendered moot.

IT IS SO RECOMMENDED.

*[signature]*

January 19, 2011                                      Shiva V. Hodges
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation.**